[Civ. No. 209.   First Appellate District.—September 14, 1908.]

COUNTY OF ALAMEDA, Respondent, v. HENRY P. DALTON, H. N. DALTON, and FRANK N. DALTON, Appellants.

COUNTY GOVERNMENT ACT—COPY OF ALAMEDA COUNTY ASSESSMENT-ROLL FOR OAKLAND—DUTY OF ASSESSOR—COMPENSATION ABOVE COST PAYABLE TO COUNTY.—Under the provisions of subdivision 8 of section 160 of the County Government Act of 1897, applicable to Alameda county as a county of the third class, and the general provisions of section 226 of that act, the county assessor is not entitled to retain or to grant to any deputy whose salary is paid by the county the compensation of five cents per folio allowed by section 3653 of the Political Code, for supplying to the city of Oakland a certified copy of so much of the assessment-roll as relates to city property; but the assessor is allowed only the actual cost of preparing the same, and must account for and pay over to the county the whole difference between such actual cost and the sum received from the city.

ID.—ACTION BY COUNTY ON ASSESSOR'S BOND—MONEY FROM CITY PAID DEPUTY—EVIDENCE.—In an action by the county on the bond of the county assessor to recover money wrongfully paid to a deputy of the whole compensation from the city for the copy of the assessment-roll for a specified year, the court properly allowed questions to such deputy as to the number of days he was employed in making the copy, the names of those assisting him, and the amount paid each for his services.

ID.—JUDGMENT FOR COUNTY—DEDUCTION OF COST.—The court properly rendered judgment for the county after deducting a liberal allowance for the actual cost of the copy of the assessment-roll in question.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Henry A. Melvin, Judge.

The facts are stated in the opinion of the court.

Fitzgerald & Abbott, for Appellants.

Everett J. Brown, District Attorney, and W. H. L. Hynes, Assistant District Attorney, for Respondent.

COOPER, P. J.—This action was brought to recover of defendant Henry P. Dalton, the assessor of Alameda county, and the other defendants as sureties on his official bond, the sum of $2,600, being the amount received by said Dalton from the city of Oakland for making a certified copy of the assessment-roll of said county of Alameda for the year 1902 so far as it pertains to property situate in the city of Oakland, less the actual cost incurred by said Dalton in preparing said roll. The case was tried before the court without a jury and findings filed, on which judgment was entered for plaintiff in the sum of $1,999 with costs. Defendant made a motion for a new trial, which was denied. This appeal is from the judgment and the order denying the motion for a new trial.

As stated by appellants in their opening brief, the question in the case is as to the proper disposition of the money received by the assessor from the city of Oakland for making the certified copy of the assessment-roll so far as it pertains to said city of Oakland. This is the main question in the case, and the only one that need be fully discussed.

It is made the duty of the assessor to furnish to incorporated cities or towns, upon request, on or before the third Monday in July of each year, "a complete certified copy of his assessment-book so far as such assessment-book pertains to property within the limits of said incorporated cities and towns. The assessor may charge incorporated cities and towns **five** cents per folio of 100 words for each copy of his assessment-book furnished such incorporated cities and towns." (Pol. Code, sec. 3653.)    It is provided in the County Government Act of 1897, [Stats. 1897, p. 504], as to the classes of counties to which the county of Alameda belongs (section 160, subdivision 7) as follows: " . . . Provided, however, that should the assessor be directed by any law, or by any order of the board of supervisors, or by any municipality within said counties of the third class, to prepare maps, plats, block books for the use of the county, or assessment-rolls for the use of any municipality, then said assessor shall only receive the actual cost by him incurred in making or preparing such maps, plats, block books or assessment-rolls, and provided further that he shall file with the County Auditor a sworn statement, showing the persons to whom, and the amounts paid to each, for such maps, plats, block books or assessment-rolls; and he shall account forthwith and pay over to the County any difference between such cost and the amount so allowed him for such work." And section 216 of said County Government Act provides as follows: "All salaried officers of the several counties of this state shall charge and collect for the use of their respective counties, and pay into the county treasury on the first Monday in each month, the fees now or hereafter allowed by law in all cases, except where such fees or a percentage thereof is allowed such officers, and excepting also such fees as are charged against the county."

Under the above provisions the appellants do not claim that the assessor is allowed to make any personal profit to himself for such certified copies furnished to incorporated cities or towns; but they insist that the evidence in this case shows that the assessor let the contract to one Miller to make the certified copy of the assessment-books required by the city of Oakland at the sum of five cents per folio; that such sum was the reasonable value of making such copy of the assessment-roll, and

that the assessor actually paid Miller the whole $2,650, receiving no part thereof himself. The trial court found otherwise, and the evidence in our opinion justifies the findings. Miller was a deputy in the assessor's office, receiving a monthly salary of $100 per month, paid by the county of Alameda, and received such salary during the time he was engaged in preparing the certified copy. He was assisted in the work by the other deputies in the office, all of whom were being paid their regular salaries by the county, and none of whom appears to have been paid any extra compensation with the exception of $33.35 paid to one Wilson, and $20 paid to one Stoddard. Nor does it appear that the other deputies demanded or asked for any extra compensation. It is true that Miller testified that he received $2,650 from Dalton for making the copy; but he stated in other parts of his testimony that the reason he had not paid any other deputies who assisted in making the copy was because the matter was in litigation, and that he had never specified what he would pay them. It is evident that if Miller was really paid $2,650 by Dalton, and hired his own assistants to make the copy, that the litigation between Dalton and the county did not concern him. The testimony of Miller, to the effect that Dalton immediately gave him his promissory note for $2,600, the contract price for doing the work, and that Dalton afterward gave him a check in payment of the note—which check was produced and marked "Paid"—is, to say the least, peculiar. The usual way would have been for Miller to wait until the county had paid for the work, as the contract was for his benefit, and he was not paying out any money to have the work done. Dalton testified that he received the particular $2,600 from the county, and that no part of that money was paid to Miller. The copy of the assessment so made was made in twenty-seven volumes, a great portion of which was printed matter already printed in the volumes at the time the copying was done. These volumes cost the county $10 to $13 per volume. The amount of printed matter in the volumes is shown to have been 24,468 folios out of the entire 53,000 folios, or nearly one-half, for which the city of Oakland paid the $2,600. It seems at least improbable that Miller received $2,600 from Dalton for ten days' work by himself and the other deputies in the office, each of whom was receiving a salary from the county,

for copying into twenty-seven volumes, which volumes were paid for by the county and used in making the copies. The volumes, printed matter, ink, paper, salaries of deputies, and the office in which the work was done, were all paid for by the county. We do not find the evidence in the record on which the court based its allowance of $601 to Dalton; but we presume it was upon some basis or calculation by which the court intended to allow the reasonable value of the extra copying done in Dalton's office. The County Government Act contemplated that the assessor should not be required at his own expense to do extra work in preparing copies of the assessment-roll for municipalities, for it expressly provides that when the assessor is by law required to make such copies he "shall only receive the actual cost by him incurred in making or preparing such . . . assessment-rolls." It was the official duty of the assessor to make the certified copy of the assessment-roll, and not to delegate such official duty to another or third party. This is further shown by the provision in the same section that the assessor "shall file with the County Auditor a sworn statement, showing the persons to whom, and the amounts paid to each, for such . . . assessment-rolls, and that he shall account forthwith and pay over to the county any difference between such cost and the amount so allowed him for such work." If under the above provision the assessor was compelled to employ extra help, he could make his verified statement, giving the names of the persons employed, and the sum paid to each person, and thus be saved from paying the amounts from his own pocket. To illustrate what the expense would have been to the assessor in this case had he employed the extra help and attended to the matter himself, we find the time given by Miller that he was engaged with the deputies in making the copies was ten days, and that the number of deputies, including himself, was 13; 13 times 10 is 130, which, at $4 per day—being about the wages paid the deputies, who received $100 per month—would amount to $520. The court allowed $601, which indeed appears to be liberal.

The court did not err in allowing questions to be asked by plaintiff's counsel of Miller as to the number of days he was employed in making the copies, the names of the parties em-

ployed in assisting him, and the amount of money paid to each for such services.

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 13, 1908.